UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RI, INC. d/b/a SEATING SOLUTIONS, *et al.*,

                Plaintiffs,                <u>MEMORANDUM AND ORDER</u>

   -against-                            CV 10-1795 (LDW) (AKT)

COLLEEN GARDNER, in her official capacity
as New York State Commissioner of Labor, *et al.*,

                Defendants.
----------------------------------------------------------------X
WEXLER, District Judge

      Plaintiffs RI, Inc. d/b/a Seating Solutions ('Seating Solutions"), Lisa Suprina, Scott

Suprina ("Suprina"), and Tony English bring this action under 42 U.S.C. § 1983 and the National

Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, against defendants Colleen Gardner,

New York State Commissioner of Labor ("Commissioner"); M. Patricia Smith, former New

York State Commissioner of Labor; Christopher Alund, Director of the Bureau of Public Work

("BPW") of the New York State Department of Labor ("DOL"); Joseph Ocon ("Ocon), senior

investigator of the BPW; and Matthew Myers ("Myers"), senior investigator of the BPW.

Defendants move for summary judgment under Federal Rule of Civil Procedure 56. Plaintiffs

oppose the motion.


I.  <u>BACKGROUND</u>

      For purposes of this motion, the evidence can be summarized as follows. Seating

Solutions is a corporation with its principal place of business in Commack, New York. Seating

Solutions specializes in seating system design and construction for installation of spectator

seating at recreational and athletic facilities. Seating Solutions has performed subcontracting work on a number of public construction projects in New York, including projects in Sewanhaka, Smithtown, Brookhaven and Oyster Bay (the "Projects").

In early 2005, Seating Solutions' personnel formed a union known as the United Federation of Maintenance Installers & Assemblers of Audience & Spectator Seating Systems ("United Federation" or the "Union"). On April 30, 2005, Seating Solutions and the United Federation entered into a collective bargaining agreement (the "United Federation CBA"). The Union collectively bargained for, *inter alia*, a guaranteed work/no layoff provision, given that Seating Solutions tends to have more work in the warmer months than in the cooler months. In exchange for the guaranteed work/no layoff provision, the Union members agreed to waive any of their rights under state and federal prevailing wage statutes.

Public construction projects in New York are subject to the state's prevailing wage law, New York Labor Law §§ 220 *et seq*. Essentially, the prevailing wage law requires contractors bidding on public work to pay union-level wages, as determined by collective bargaining agreements, whether their employees are union members or not. The law requires that the wages to be paid "for a legal day's work . . . to laborers, workmen or mechanics upon such public works, shall not be less than the prevailing rate of wages [as defined therein]." *Id.* § 220(3)(a). The law also requires "supplements" be paid to such workers in accordance with "the prevailing practices in the locality." *Id.* § 220(3)(b). Supplements include remuneration or payments which are not "wages" under the law "including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay, life insurance, and apprenticeship training." *Id.* § 220(5)(b).

Section 220(5)(a) defines the prevailing rate of wage as

> the rate of wage paid in the locality . . . by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public or private work provided that said employers employ at least thirty per centum of workers, laborers or mechanics in the same trade or occupation in the locality where the work is being performed.

*Id.* § 220(5)(a).  The Commissioner is the "fiscal officer" responsible for setting the prevailing wage rate outside the City of New York.  *Id.* § 220(5)(e).  The Commissioner determines the prevailing rate through a two-step process.  First, the Commissioner classifies work as pertaining to a particular trade, and second, the Commissioner determines the rate that is prescribed for the work in that locality by the collective bargaining agreements covering that trade.  *See Lantry v. State of New York*, 6 N.Y.3d 49, 54-55 (2005).

In 2005, defendants received complaints that Seating Solutions had not paid the prevailing wage on the Projects.  In March 2006, Ocon requested payroll information from Seating Solutions for its work on the Projects.  Ocon then conducted an audit of Seating Solutions' work on the Projects.  As part of the audits, Ocon and Myers classified workers employed by Seating Solutions on the Projects as "ornamental ironworkers," relying on a collective bargaining agreement between Allied Building Metal Industries, Inc. and the Architectural and Ornamental Iron Workers Local Union No. 580 (the "Ironworkers' CBA").  The Ironworkers' CBA covered the same work covered by other collective bargaining agreements (including those of carpenters and the United Federation), such as metal seats, seating and bench seats.  Indeed, plaintiffs concede that the Ironworkers' CBA covered the work performed on the Projects.  However, the other collective bargaining agreements had lower rates

than the Ironworkers' CBA. After determining this classification, Ocon and Myers determined the prevailing wage rates for ornamental ironworkers based on Prevailing Rate Schedules created for ornamental ironworkers by the Commissioner and DOL employees. According to plaintiffs, the Commissioner and DOL did not perform any independent inquiry into the wages actually paid for similar work in the relevant localities, relying instead on the collective bargaining agreements "of established trade unions." Plaintiffs maintain that defendants did not contact the United Federation for this purpose because it did not consider it to be a "bona fide labor organization," but merely an invalid union "concocted" by Suprina.

Relying on the Ironworkers' CBA and the rate for ornamental ironworkers listed on the Prevailing Rate Schedules, the DOL determined that Seating Solutions had underpaid prevailing wages and supplements to its workers on the Projects by more than $300,000. In November 2008, following a hearing, at which plaintiffs appeared with counsel, an administrative law judge issued a Report and Recommendation (the "R&R") determining that Seating Solutions violated the prevailing wage law and was required to pay damages, interest, and penalties. In April 2009, the Commissioner adopted the R&R. In May 2009, plaintiffs brought an Article 78 proceeding in New York State court challenging the DOL's determination.

On April 22, 2010, before a decision by the Second Department in the Article 78 proceeding, plaintiffs commenced this action, asserting various claims, of which the following remain: (1) violation of substantive due process; (2) violation of equal protection; and (3) violation of rights under the NLRA.[1]

---

[1]Plaintiffs also asserted, but have stipulated to dismissal of, procedural due process and First Amendment retaliation claims.

Thereafter, on April 27, 2010, the Second Department confirmed the DOL's determination, holding that the DOL's use of the Ironworkers' CBA for trade classification purposes was supported by substantial evidence and was not unreasonable. *See R.I., Inc. v. N.Y. Dep't of Labor*, 72 A.D.3d 1098, 1099 (2d Dep't 2010). In reaching its decision, the Second Department concluded that "the record demonstrates that the [DOL] gave due consideration to the nature of the work performed and relevant collective bargaining agreements. Consequently, [the DOL's] determination as to trade classification was not unreasonable." *Id.* The New York Court of Appeals denied leave to appeal. *See R.I., Inc. v. N.Y. Dep't of Labor*, 17 N.Y.3d 703 (2011).

## II.  DISCUSSION

### A.  Motion for Summary Judgment Standard

Summary judgment is appropriate where there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(a); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). A material fact is one that might "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether there is a genuine dispute of a material fact, a court must draw all inferences in favor of the nonmoving party. *D'Amico*, 132 F.3d at 149.

### B.  Analysis of Claims

#### 1.  Violation of Substantive Due Process

To prove a claim for violation of substantive due process, a plaintiff must show (1) that it possessed a constitutionally cognizable property interest of which it was deprived by the state, *see Clubside, Inc. v. Veletin*, 468 F. 3d 144, 152 (2d Cir. 2006); *Goodspeed Airport v. East Haddam Land Trust, Inc.*, 166 Fed. Appx. 506, 508 (2d Cir. 2006) ("To prevail on a procedural or substantive due process claim, the plaintiff must first identify a liberty or property interest protected by the Constitution of which the state deprived him or her."); and (2) that defendants' actions were "arbitrary, or conscience-shocking, in a constitutional sense," *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

Plaintiffs claim that defendants violated plaintiffs' substantive due process rights through an unlawful delegation of authority to private parties, in that defendants relied solely on, and adopted without exercising discretion, the Ironworkers' CBA to classify workers and set the prevailing rate. Plaintiffs rely on *General Electric Co. v. New York State Department of Labor*, 936 F. 2d 1448 (2d Cir. 1991) ("*GE II*"). In *GE II*, the Second Circuit found that where unions had negotiated two different wage scales for public and private work, the DOL's adoption of those wage scales without any independent exercise of discretion could constitute an unconstitutional delegation of authority – and, therefore, a violation of substantive due process. *Id.* at 1458-59. In reversing a grant of summary judgment, the Second Circuit found genuine issues of material fact existed as to, *inter alia*, whether the DOL relied on a collusively negotiated CBA that contained a two-tier wage system for both public and private work. *Id.*

Here, defendants argue that plaintiffs' claim is barred by collateral estoppel, given the Second Department's ruling in the Article 78 proceeding following the administrative hearing. Defendants also argue, *inter alia*, that the claim is insufficient and plaintiffs' reliance on *GE II* is

misplaced, as plaintiffs fail to show arbitrary, let alone conscious-shocking, conduct.  The Court

agrees with defendants that this claim must be dismissed, even assuming that plaintiffs have a

property interest.[2]

A district court is required to "give[] a prior state court decision the same preclusive

effect that the courts of that state would give to it." *Colon v. Coughlin*, 58 F.3d 865, 869 n.2. (2d

Cir. 1995).  As the Second Circuit has explained, "[u]nder New York law, the doctrine of issue

preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior

proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity

to litigate the issue in the first proceeding." *Id.* at 869.

In the Article 78 proceeding, the Second Department concluded that the DOL's use of the

Ironworkers' CBA for trade classification purposes was supported by substantial evidence and

was not unreasonable. *See R.I.*, 72 A.D.3d at 1099.  In reaching its decision, the Second

Department concluded that "the record demonstrates that the respondents gave due consideration

to the nature of the work performed and relevant collective bargaining agreements.

Consequently, [the DOL's] determination as to trade classification was not unreasonable." *Id.*

Plaintiffs do not deny that they had a full and fair opportunity to litigate the issues raised in the

Article 78 proceeding.  The Second Department's finding that the DOL did not act unreasonably,

but gave due consideration to the nature of the work performed and relevant CBA's in

---

[2]Notably, plaintiffs argue that they have a cognizable property interest in the earned
monies being withheld, *see GE II*, 936 F. 2d at 1457 ("It is well established that a contractor has
a right to timely payment for work it performs under a contract with a state agency, and that such
right is a property interest protected by the due process clause."), while defendants argue that a
contractor does not possess a cognizable property interest in monies being withheld *until* it has
complied with the prevailing wage law, *see Leed Indus., Inc. v. N.Y. State Dep't of Labor*, No. 09
Civ. 9456 (JSR), 2010 WL 882992, *3 (S.D.N.Y. March 8, 2010).

determining job classification and the prevailing wage rate, precludes a determination that defendants failed to exercise discretion in classifying work and setting the rate or that their conduct was otherwise arbitrary, let alone conscious shocking. Thus, this claim is barred by collateral estoppel.

Moreover, in *GE II*, the Second Circuit held that application of New York Labor Law § 220(5) – which authorizes the Commissioner to define the prevailing wage rate by referring to collective bargaining agreements – *could* be arbitrary "particularly given the record in this case." *GE II*, 936 F. 2d at 1455. By contrast, the present action does not involve a collusively negotiated collective bargaining agreement or two-tier wage system, or circumstances involving any remotely akin delegation of authority, and plaintiffs do not identify a genuine dispute as to any material fact that could show arbitrary or conscious-shocking conduct. Thus, this claim is insufficient.

Accordingly, plaintiffs' substantive due process claim is dismissed.

2. Violation of Equal Protection

The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Because plaintiffs do not claim discrimination on the basis of membership in a particular group, they may proceed on an equal protection claim under a "class of one" theory, as recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 120 S. Ct. 1073 (2000). In this respect, plaintiffs must show that they were "intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside*, 468 F.3d at 159 (citing *Olech*, 120 S. Ct. 1073). To prevail, the "class-of-one plaintiffs must show an extremely high degree of similarity

between themselves and the persons to whom they compare themselves." *Id.* (citing *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)).

Plaintiffs allege that defendants intentionally and arbitrarily discriminated against them by singling plaintiffs out and treating them differently than similarly-situated contractors employing unionized workforces, and that the disparate treatment was not rationally related to a legitimate state interest. In essence, plaintiffs argue that defendants treated them differently than employers dealing with traditionally favored unions.

A review of the record demonstrates that plaintiffs fail to produce evidence sufficient to show a similarly-situated contractor that was allegedly treated differently. In this respect, plaintiffs evidence does not indicate the disparate treatment of any other contractor employing unionized workforces reported to have violated the prevailing wage law on public work. Moreover, plaintiffs fail to present evidence sufficient to show that defendants acted without any rational basis in their enforcement of the prevailing wage law against Seating Solutions. Thus, plaintiffs do not identify a genuine dispute as to any material fact as to this claim, and this claim must be dismissed.

Accordingly, plaintiffs' equal protection claim is dismissed.

3. <u>Violation of Rights Under the NLRA</u>

Plaintiffs argue, broadly, that defendants' actions are preempted by the NLRA because defendants applied state law "in a way that frustrates the core goals and protection of the NLRA." Specifically, plaintiffs argue that preemption exists under (1) *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959); (2) *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976); and (3) Labor Management Relations Act ("LMRA") § 301,

29 U.S.C. § 185. Defendants argue that New York's prevailing wage law is not preempted by the NLRA and that plaintiffs fail to raise any genuine dispute of material fact as to this claim. This Court agrees with defendants that preemption does not apply under any of these grounds.

As for *Garmon* preemption, plaintiffs argue that defendants' actions are prohibited because they amount to state regulation of the negotiation of wage rates, a protected activity under NLRA section 7. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Pls.' Mem.") at 17. Under *Garmon*, "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. As the Supreme Court later emphasized, "the *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the [NLRA]." *Wisconsin Dep't of Indus. v. Gould Inc.*, 475 U.S. 282, 286 (1986). Plaintiffs argue that *Garmon* preempts attempts by state regulators "to force parties to a collective bargaining agreement to abide by wage terms other than those in their agreement." Pls.' Mem. at 17. Thus, plaintiffs reason, defendants may not discard collectively bargained-for employment terms, such as the negotiated wage rates in the United Federation CBA.

New York law presumptively requires the use of collective bargaining agreements to set prevailing wage rates in the state, and the Second Circuit has held that New York's prevailing wage law, § 220, "has not been preempted by the [NLRA]." *Gen. Elec. Co. v. N.Y. State Dep't of Labor*, 891 F.2d 25, 27-28 (2d Cir. 1989) ("*GE I*"). The Second Circuit reaffirmed that

conclusion in *GE II*. *See GE II*, 936 F. 2d at 1459-60. Contrary to plaintiffs' arguments, Seating

Solutions and the United Federation may not bargain their way around the protections of the

prevailing wage law and its application to public work. Accordingly, *Garmon* preemption does

not apply.

As for *Machinists* preemption, plaintiffs argue that "a regulator cannot use its powers to

alter the balance of power that exists between labor and management." Pls.' Mem. at 21. Under

*Machinists*, the NLRA preempts state laws that " 'upset the balance of power between labor and

management expressed in our national labor policy.' " *Machinists*, 427 U.S. at 146 (quoting

*Teamsters v. Morton,* 377 U.S. 252, 260 (1964)). In other words, this preemption principle

prohibits state regulation of areas that have been left " 'to be controlled by the free play of

economic forces.' " *Id.* at 140 (quoting *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971)).

State action is "only preempted if it regulates the use of economic weapons that are recognized

and protected under the NLRA such that the state or local government has entered 'into the

substantive aspects of the bargaining process to an extent Congress has not countenanced.' "

*Roundout Elec., Inc. v. N.Y. State Dep't of Labor*, 335 F.3d 162, 167 (2d Cir. 2003) (quoting

*Machinists*, 427 U.S. at 149) (some internal quotation marks omitted). Plaintiffs maintain that

defendants' application of the state prevailing wage law "aims toward a single purpose: keeping

the union construction contractors in business." Pls.' Mem. at 22. According to plaintiffs, in

setting rates, defendants "only solicit collective bargaining agreements from 'established

unions,' " and then they plug those rates into the prevailing wage schedules without determining

whether these unions employ 30% of the workers performing the work claimed in their collective

bargaining agreements.  *Id.*  Plaintiffs argue that defendants' application of the prevailing wage law is impermissible under *Machinists*.

Contrary to plaintiffs' arguments, *Machinists* does not preempt defendants' enforcement of § 220.  The collective bargaining process between plaintiffs and the union suffered no impermissible interference from defendants' enforcement of the prevailing wage law.  To the contrary, it appears that the application of the prevailing wage law "neither encourage[s] nor discourage[s] the collective-bargaining processes that are the subject of the NLRA," *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985).  *See Roundout Elec.*, 335 F.3d at 168-69 (relying on *Metropolitan Life* in holding that DOL's implementation of prevailing wage statute through use of annualization formula not within scope of *Machinists* preemption).  Indeed, plaintiffs do not show that defendants' application of the prevailing wage law had anything more than an "indirect effect on the right of self-organization established in the Act." *Metropolitan Life*, 471 U.S. at 755.  Moreover, despite plaintiffs' assertion that defendants applied the state prevailing wage law solely to keep union construction contractors in business, the law presumptively requires the use of collective bargaining agreements to set prevailing wage rates and the Second Circuit has rejected NLRA preemption challenges to this requirement.  *See GE II*, 936 F. 2d at 1459-60; *GE I*, 891 F.2d at 27-28.  Under § 220(6), an employer may challenge the use of a particular collective bargaining agreement to establish the prevailing wage rate by showing by competent evidence that less than 30% of local workers receive the collectively bargained rate, *see Liquid Asphalt Distrib. Ass'n v. Roberts*, 116 A.D.2d 295, 298 (3d Dep't 1986), but plaintiffs raised no such challenge.  Accordingly, *Machinists* preemption does not apply.

Plaintiffs also argue that LMRA § 301[3] preempts defendants from pursuing claims against Seating Solutions because defendants did so based on the impermissible assumption that the bargain between Seating Solutions and the United Federation was invalid. According to plaintiffs, defendants unlawfully "inserted themselves into the collective bargaining process," upon deciding that the United Federation CBA "was not one that the [DOL] would recognize." Pls.' Mem. at 19.

Section 301 is a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* at 211. Rather, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220 (citation omitted). As the Supreme Court further explained:

> Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the

---

[3]Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

> substantive provisions of private agreements the force of federal
> law, ousting any inconsistent state regulation.  Such a rule of law
> would delegate to unions and unionized employers the power to
> exempt themselves from whatever state labor standards they
> disfavored.  Clearly, § 301 does not grant the parties to a
> collective-bargaining agreement the ability to contract for what is
> illegal under state law.

*Id.* at 211-12 (footnote omitted).

In light of these principles, this Court concludes that § 301 does not preempt the DOL's enforcement of § 220, a state statute regulating certain substantive guarantees, nor does it grant parties to a collective bargaining agreement the right or ability to contract around those guarantees.  *See Lividas v. Bradshaw*, 512 U.S. 107, 122-24 (1994).  Moreover, it appears that defendants' enforcement of the prevailing wage law only tangentially involves the terms of the United Federation CBA.  Accordingly, LMRA § 301 does not preempt defendants' actions.

Accordingly, this claim is dismissed, as no genuine dispute of material fact exists and it fails as a matter of law.[4]

## III.  CONCLUSION

For the above reasons, defendants' motion for summary judgment is granted and the

---

[4]Given the Court's dismissal of plaintiffs' claims on the grounds stated, the Court need not reach defendants' additional argument (argued rather perfunctorily) that plaintiffs' claims against the individual defendants are barred by qualified immunity.

complaint is dismissed.[5]  The Clerk of Court is directed to close the file in this action.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        August 23, 2012

---

[5]Plaintiffs assert that defendants sent plaintiffs a letter, shortly before defendants filed their summary judgment motion, demanding payment of $366,459 for failure to comply with prevailing wage requirements.  In response, plaintiffs moved for a preliminary injunction preventing defendants from taking any action pursuant to the demand letter.  Given the Court's dismissal of the complaint, the motion for a preliminary injunction is denied.